# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### SOUTHERN DIVISION

| | | |
|---|---|---|
| SUSAN LYN PERRY GREENE, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 8:08-cv-02904-AW |
| | * | |
| UNITED STATES LIFE INSURANCE CO. | * | |
| IN THE CITY OF NEW YORK, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OPINION

Plaintiffs Susan Lyn Perry Greene, Jill Allison Brodrick, and Jodi Ann Perry Yeager bring this action against Defendant United States Life Insurance Co. in the City of New York ("United Life"). Pending before the Court is Defendant's Motion for Summary Judgment. Doc. No. 29. The Court has reviewed the entire record, as well as the pleadings and exhibits, and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons set forth below, the Court GRANTS Defendant's Motion for Summary Judgment.

## I.      FACTUAL & PROCEDURAL BACKGROUND

The following facts are not in dispute. The Plaintiffs in this action are the trustees of the Marvin Perry Irrevocable Trust ("Trust"). Their father, Marvin Perry ("decedent"), established the trust on October 29, 1998. *See* Doc. No. 29-3, Ex. 2 at P-00022-42. One of the assets of the Trust was a life insurance policy on the decedent with a face amount of $450,000. *See* Doc. No. 29-2, Ex. 1 at P-00003. The planned premium under the contract was $325 per month, *id.*, and the decedent paid the planned monthly premiums from the time the policy was first issued

(December 1985) until around the time it was terminated (June 2006).

However, beginning on December 1, 2005 (and again on January 3, April 23, and May 10, 2006), United Life sent letters and reports to the Trust warning that the planned monthly premiums were no longer sufficient and that the policy would be terminated on June 1, 2006 unless additional payments were made. *See* Doc. No. 29-8, Ex. 7 at P-00083; Doc. No. 29-10 – 29-12, Exs. 9-11. United Life argues that the insurance contract authorized it to demand additional payment because the planned monthly premiums were no longer enough to offset the monthly cost of insurance, *see* Doc. No. 29-1 at 3, and Plaintiffs do not dispute these allegations in their Opposition to Defendant's Motion for Summary Judgment, *see* Doc. No. 34.

On an uncertain date, the decedent mailed a check to United Life, along with some questions that were written by hand on a copy of United Life's May 10, 2006 notice of pending termination. The May 10 notice listed the "Planned Premium for 01 Months" as $325 and, on the line directly below, listed the "Minimum Payment To Pay For Coverage Until JULY 1, 2006" as $4,231.67. On the copy of the notice that he mailed to United Life, the decedent circled the dollar amount ($325) and wrote, "I don't understand this." Furthermore, the decedent circled the text on the second line ("Minimum Payment To Pay For Coverage Until JULY 1, 2006") and wrote, "should this be 2007??" The attached check was signed by the decedent and dated May 16, 2006, but the dollar amount was left blank. No express instructions or authorizations were given regarding how the check should be completed. *See* Doc. No. 29-14, Ex. 13.

United Life has no record of when it received the decedent's check or how that particular check was processed. However, discovery has revealed facts that describe the Defendant's routine check-processing procedures. Checks are initially mailed by the policy owner to a United Life lock-box operated by CitiBank in Carol Stream, Illinois. CitiBank determines whether the

checks are negotiable. Negotiable instruments are processed with no further involvement by United Life personnel, but non-negotiable instruments are forwarded to an American General Life Company ("AGLC") office in Springfield, Illinois that processes incomplete checks on behalf of United Life by sending them back to the payor with a standard letter requesting a negotiable check. AGLC processes checks on a first-come, first-serve basis; it does not sort or prioritize checks based on whether the underlying policy is at risk of lapsing. AGLC generally aims to send checks it receives back to the payor within three days, but it is not always able to meet this goal. *See* Doc. No. 29-15, Ex. 14 at 8-26.

In a letter dated June 2, 2006, United Life (through AGLC) sent a form letter to the decedent indicating that his incomplete check had not been processed because the dollar amount was left blank. The letter requested that he "send . . . a new check . . . with amounts filled in." Doc. No. 29-18, Ex. 17. A separate letter from United Life (through AGCL) to decedent, dated June 1, 2006, stated that the payments needed to sustain the policy had not been received, and that "coverage terminated as of JUNE 1, 2006." That letter indicated that the decedent would need to apply for reinstatement of the policy. *See* Doc. No. 29-13, Ex. 12.

The decedent applied for reinstatement at the end of June, Doc. No. 29-19, Ex. 18, but the application was denied "due to medical history," Doc. No. 29-20, Ex. 19. In September, 2006, Mr. Perry died of cancer. United Life refused to pay the death benefit under the decedent's policy, and the trustees brought this action. The Court previously granted the Defendant's Motion to Dismiss as to the Plaintiffs' negligence and fraud claims, but allowed Plaintiffs' breach of contract claims to go forward. *See* Doc. No. 22. The Defendant's Motion for Summary Judgment on the remaining breach of contract claim is currently before the Court.

## II.     STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## III.     ANALYSIS

Plaintiffs contend that Defendant breached its implied duty of good faith and fair dealing under the life-insurance contract. Under Maryland law, the duty of good faith and fair dealing is part and parcel of the breach of contract claim, rather than a distinct cause of action. *Mount Vernon Props., LLC v. Branch Banking & Trust Co.*, 907 A.2d 373, 381 (Md. Ct. Spec. App. 2006). The duty "does not create new contract terms," *7-Eleven, Inc. v. McEvoy*, 300 F. Supp. 2d 353, 360 (D. Md. 2004), but merely "'prohibits one party to a contract from acting in such a

manner as to prevent the other party from performing his obligations under the contract,'" *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 183 (4th Cir.2000) (quoting *Parker v. Columbia Bank*, 604 A.2d 521, 531 (Md. 1992)).

Plaintiffs argue that the Defendant failed to act in good faith by: (1) returning the blank check to the decedent, rather than filling in the missing dollar amount and processing the check, and (2) failing to notify the decedent about the problem with his check until after the policy had lapsed.[1]

The Defendant responds with several arguments, including that: (1) United Life only owed a duty of good faith to the Trust, not to the decedent, because the decedent transferred ownership of the life-insurance policy to the Trust, (2) United Life had no legal right (or duty) to process the blank check sent by decedent, and (3) United Life's delay in processing the decedent's check is a result of following good faith, routine procedures, and the Plaintiff presents no evidence of bad-faith deviation from those procedures. Because the Court agrees with Defendant's second and third arguments, which are fully sufficient to dispose of Plaintiffs' claims, it is unnecessary to address Defendant's first argument. The remainder of this Opinion assumes (without deciding) that United Life owed a duty of good faith to the decedent and/or that bad faith toward the decedent is tantamount to bad faith toward the Trust.

### 1. *Authorization to Complete the Blank Check*

The Plaintiffs' first theory is that the Defendant breached its duty of good faith by not filling in the missing dollar term on decedent's check and accepting it as thus completed. This theory falters because the blank check was a non-negotiable instrument, and the Defendant had

---

[1] In their Opposition to Defendant's Motion for Summary Judgment, the Plaintiffs never argue (or present any facts to suggest) that the Defendant acted in bad faith when it denied decedent's application for reinstatement of life insurance. Thus, there is no issue for trial regarding reinstatement, and the Court will not further address it.

neither the right nor the duty to complete it.

The check is an "[i]ncomplete instrument" because the numerical amount is blank. *See* MD. CODE ANN., COM. LAW, § 3-115 & cmt. 3. The Defendant could not complete the check and cash it "without authority of the signer," *i.e.*, the decedent. *Id.* § 3-115(c). Plaintiffs contend that the decedent provided his authorization for the check to be completed by: (1) his long history of promptly paying all necessary premiums from 1985 through 2006, and (2) his handwriting on the document attached to the check, indicating his confusion over whether he was supposed to pay $325 or $4,231.67. Plaintiffs argue that these facts are sufficient to convey to United Life the decedent's intent to have the company complete the check for whatever premium amount was necessary: $325 or $4,231.67.[2]

The Court disagrees and holds that these allegations are insufficient to make out a genuine issue of fact regarding the Defendant's authority to complete the check. The only indications of intent from the decedent are in the form of questions and confusion, not authorizations. He circled portions of the pending notice of termination and wrote, "I don't understand this," and, "should this be 2007??" He did not attach a letter affirmatively expressing his instructions and desires regarding the check. Short questions and expressions of incomprehension accompanying a blank check do not confer authority to complete the check.

There is an additional reason to reject Plaintiffs' first theory: even if United Life did have authorization to complete the check, it did not have a *duty* to do so. The life-insurance policy created no express duty on the part of United Life to complete unfinished checks, and the implied duty of good faith "does not create new contract terms," *7-Eleven, Inc.*, 300 F. Supp. 2d

---

[2] Plaintiffs also argue that the decedent "authorized [any] necessary premium transfers . . . to keep the policy in force" by directing that the monthly planned premium of $325 be paid each month out of his bank account through direct deposit. Doc. No. 34-1 at 7. This is incorrect: authorization to pay a set amount ($325) on a regular interval (monthly) does not constitute authorization to pay whatever is "necessary . . . to keep the policy in force." *Id.*

at 360; *see also Parker*, 604 A.2d at 531 ("[T]he duty of good faith merely obligates a lender to exercise good faith in performing its contractual obligations; it does not obligate a lender to take affirmative actions that the lender is clearly not required to take under its loan documents."); *Messing v. Bank of Am.*, 373 Md. 672, 701 (2003) (declining to impose on banks a duty to accept checks presented without proper identification because, *inter alia*, accepting such checks creates a risk of fraud and financial loss). Therefore, even if there were a genuine issue of fact regarding Defendant's authorization to complete the check, the disputed fact would not be "material" and would not justify allowing the case to proceed to trial. Fed. R. Civ. P. 56(c); *see Anderson*, 477 U.S. at 248 ("[T]he substantive law will identify which facts are material.").[3]

### 2. *Delays in Processing Decedent's Check*

Plaintiffs' second argument is that United Life's slow processing of the decedent's check justifies the inference that United Life was intentionally running out the clock on the life of the policy. According to Plaintiffs, the evidence suggests that the decedent's check was mailed to United Life's check-processing lock-box (operated by CitiBank) in Carol Stream, Illinois on or about May 16. The check should have taken only a few days to arrive at the CitiBank lock-box, and CitiBank's usual procedure for handling incomplete checks is to mail them through overnight delivery to a United Life processing center in Springfield, Illinois. The Springfield office, in turn, generally processes checks and returns them (along with a form letter explaining why the check was inadequate) to the payor within three days. Plaintiffs argue that, had all these

---

[3] The cases cited on this issue by Plaintiffs deal with liability for drawing a blank check, *Piel Constr. Co. v. Pennsylvania*, 35 F.2d 265, 268 (3d Cir. 1929), and who may sign a check as an agent on behalf of a principal, *Taylor v. Equitable Trust Co.*, 304 A.2d 838, 842 (1973). Both of these questions are irrelevant to the issues in this case: whether the implied duty of good faith creates a duty to complete an incomplete check when authorized to do so, and whether certain types of communications (*i.e.*, asking questions and stating "I don't understand this") constitute authorization.

steps taken the amount of time they were supposed to take, the decedent would have had his letter returned to him on or about May 24, providing him with sufficient time to cure the defect in his payment and prevent the policy from lapsing. However, United Life did not dispatch its return letter until June 2, by which time the policy had expired.[4]

These allegations are insufficient as a matter of law to make out a good faith and fair dealing claim. When responding to a motion for summary judgment, the non-moving party is entitled to have "all justifiable inferences" drawn in its favor, *Masson*, 501 U.S. at 520, but it "cannot create a genuine issue of material fact through *mere speculation or the building of one inference upon another*." *Beale*, 769 F.2d at 214 (emphasis added). That is precisely what Plaintiffs attempt to do here. With no direct evidence of bad faith on the part of United Life, Plaintiffs ask the Court to grant a long list of assumptions regarding the timing that it would have taken United Life to process decedent's check had it acted in good faith. Plaintiffs then ask the Court to infer that a deviation from these estimates is evidence of United Life's bad faith, even though that delay "is consistent with other, equally plausible explanations," *i.e.*, the fact that small processing delays are endemic in bureaucratic settings. *Matsushita Elec. Indus. Co.*, 475 U.S. at 596-97. Given the numerous stages where delays could have been introduced (*i.e.*, the gap, if any, between decedent's signing of the check and his mailing it; the Post Office's handling and delivery of the check; CitiBank's processing at the lock-box; CitiBank's overnight delivery to Springfield; and AGLC's processing at Springfield), the absence of any evidence regarding where (or why) the delay occurred, and the small length of the delay that ultimately came about, the Court declines Plaintiffs' invitation to indulge in conjecture.

---

[4] Plaintiffs also attribute bad faith to the fact that the Defendant sent its June 2 letter to the decedent's Florida address, rather than to the Trust's address of record. However, there is an obvious, good-faith reason why United Life mailed the check to decedent's Florida address: it is the return address listed on decedent's blank check. *See* Doc. No. 29-14, Ex. 13.

The Court is sensitive to the fact that Plaintiffs have suffered a grievous loss in the death of Mr. Perry and in the termination, mere months before his death, of a life-insurance policy that he had sustained for over 20 years. However, the only ground on which Plaintiffs seek to recover in this action is the alleged bad faith of United Life, and there is no evidence upon which a reasonable jury could find that United Life acted in bad faith.

**V.      CONCLUSION**

For the reasons described above, the Court GRANTS Defendant's Motion for Summary Judgment, Doc. No. 29. A separate Order will follow.

   September 29, 2010                                    /s/
         Date                                          Alexander Williams, Jr.
                                                     United States District Judge